MINNIE C. HOPKINS, Respondent, v. MODERN
WOODMEN OF AMERICA, Appellant.

**Kansas City Court of Appeals, May 5, 1902.**

1. **Appellate Practice:** CHANGE OF THEORY: PEREMPTORY IN-
STRUCTIONS. Where defendant by his instructions in effect
admits that there is sufficient evidence to submit the issues to the
jury, he can not on appeal shift his position and claim the con-
trary.

2. **Benefit Societies:** PAYMENT OF ASSESSMENT: WAIVER:
INSTRUCTIONS. Certain instructions, relating to the waiver of
time in paying assessments levied by a benefit society, are held
to have clearly presented such issue to the jury.

3. ———: ———: INSTRUCTIONS: CUSTOM: REASONABLE
- TIME. Certain instructions, relating to the custom and a rea-
sonable time for the payment of assessments levied by a benefit
society, are held free from conflict.

4. **Evidence:** MOTION TO STRIKE OUT: NON-RESPONSIVE AN-
SWER. If a cross-examiner calls forth an answer which is in
part non-responsive to his question and part not so, he must con-
fine his motion to strike out to the non-responsive part of the
answer and can not have the entire answer stricken out.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,*
Judge.

AFFIRMED.

*J. G. Johnson* and *Ellis, Cook & Ellis* for appellant.

(1) The court erred in overruling the request of appel-
lant society for a charge to the jury peremptorily directing a
verdict in its behalf. Harvey v. A. O. U. W., 50 Mo. App.
472; Borgraefe v. Supreme Lodge, 22 Mo. App. 127; Reich-

enbach v. Ellerbe, 115 Mo. 588; McMahon v. Maccabees, 151 Mo. 522; 2 Bacon, Benefit Societies, 431a, 432, 866, 872; Schmidt v. M. W. A., 54 N. W. 264; Niblack on Benefit Societies, sec. 274, 275; Elders v. A. O. U. W., 82 N. W. 987; Madeira v. Mutual Ben. Soc., 16 Fed. 749; Bauer v. Sampson Lodge, 102 Ind. 262; Supreme Lodge v. Keener, 25 S. W. 1084; St. Mary's Benev. Soc. v. Burford, 70 Pa. St. 321. (2) The court erred in refusing to strike from the record and from the consideration of the jury, certain voluntary, argumentative and wholly prejudicial remarks of witness Adams. (3) The court erred in the modification of instructions 3 and 4 requested on the part of appellant society. (4) The court erred in declaring to the jury two distinct and conflicting rules for the determination of the question whether the actual tender of payment of the assessment in controversy was made by respondent in due time.

*Scarritt, Griffith & Jones* for respondent.

(1) The defendant, having tried and submitted this case on the theory that there was evidence to support this contested fact, and having requested and caused the trial court to submit that issue to the jury, can not be allowed to take an antagonistic and inconsistent position in this court. Bray's Admr. v. Seligman, 75 Mo. 31; McKinney v. Guhman, 38 Mo. App. 344; Randolph v. Frick, 57 Mo. App. 400; Minton v. Steele, 125 Mo. 181; Mercantile Co. v. Burrell Sisters, 66 Mo. App. 117; Fenwick v. Bowling, 50 Mo. App. 516; Seiter v. Bischoff, 63 Mo. App. 157. (2) Appellant asks for a reversal of the judgment because an answer of witness Adams to a question put to him on cross-examination by appellant's counsel was not stricken out. The motion is to strike out the entire answer. It was properly overruled. Western v. Flannagan, 120 Mo. 61.

SMITH, P. J.—The defendant, an incorporated fraternal beneficiary society, on the twelfth of January, 1898, issued to George A. Hopkins a beneficial certificate in which his mother (the plaintiff) was designated as the beneficiary therein, and by which the said beneficiary, in case of the death of the said George A. Hopkins while a beneficial member of the defendant in good standing, should be entitled to participate in the benefit fund of said defendant to the amount of two thousand dollars to be paid to the said beneficiary, provided that all the conditions contained in said certificate and the by-laws of defendant should be complied with. The said George A. Hopkins died on the tenth day of February, 1899, and several months thereafter this action was commenced by the plaintiff against defendant, on said certificate, to recover the said amount therein specified.

The defense pleaded by the answer was that in December, 1898, an assessment for the benefit fund was levied by the board of directors of the defendant; that the said George A. Hopkins was regularly notified of the said assessment and that by reason of said assessment he became liable to the defendant and obligated to pay the local clerk of the local camp the sum of eighty cents on or before the first day of February, 1899; that he failed to pay to the said clerk of said camp the said sum in discharge of said assessment on or before the said first day of February, 1899, and that from and after the second day of February, 1899, he became suspended from all the rights and benefits of the said defendant society, and his said certificate thereby became null and void, etc.

To this the plaintiff replied that "during the month of February, 1899, and for more than two years prior thereto, defendant, acting by and through its general officers, its agents and collectors, and each of them, whose names are to plaintiff unknown, received payments of assessments made against the said George A. Hopkins, member of defendant and holder of said certificate, and also received on every day during said

period, payments of assessments made against many other members of defendant and holders of similar certificates or policies of insurance of defendant, long after such assessments were due and payable according to the strict terms and conditions expressed in the said certificate and the printed by-laws and rules of the said defendant; that the practice and custom of the members of defendant corporation and the holders of the certificates to pay assessments long after they became due, according to the requirements of said certificates and by-laws, was a general custom known to and discussed by the members of, and general officers of, the defendant, and known to the defendant; and that defendant, by its course of dealing, practice, custom and conduct with reference to the said policy or certificate of insurance of the said George A. Hopkins, and with reference to similar policies or certificates of insurance of other members of the defendant, and the payment of assessments thereon, as aforesaid, waived the prompt payment of such assessments as called for by the strict terms of the said certificate and by-laws, and led the said George A. Hopkins and the plaintiff herein to believe, and they did believe, that the defendant would not insist that the assessments be paid strictly on dates fixed by the terms of the said certificate and the printed by-laws of defendant; and that the assessment of eighty cents due upon the said certificate, or policy of insurance, held by the said George A. Hopkins, due on February 1, 1899, was tendered to the defendant within the time which the defendant, according to its usual custom, practice and course of conduct, received payments of such assessments."

The defendant society is governed by the head camp, which is a representative body composed of its elective officers, its general attorney, standing committees and delegates from state camps. It is the lawmaking body of the society, and its directors and its head consul and head clerk are empowered to levy and collect from its beneficial members the amounts

necessary to pay the amounts due to beneficiaries of its deceased members. The state camps are composed of delegates from the local camps and the local camps and their officers are the means by which the society secures its members and collects the benefit assessments upon which it relies for sustenance. These local camps are composed of the individuals upon whose membership and payments the welfare and success of the society depend. The chief executive officers are consuls and clerks, and it is one of the duties of the latter to keep the accounts, collect the benefit assessments and remit them to the head camp.

The by-laws of the society provide that the clerk of the local camp shall collect and receive for the head camp, all benefit assessments levied, keep the records and accounts of the local camp and report to the head camp his collections for it and the members of his camp that are delinquent in the payment of each assessment (260, 261 and 263), that the clerk of the local camp is the agent of such camp and not the agent of the head camp and that no act or omission on his part shall have the effect of creating a liability of the society or of waiving any right or immunity belonging to it (271), that no officer of the society or of any local camp can waive any provision of the by-laws which relates to the substance of the contract for the payment of benefits (34), that any beneficial member who fails to pay any benefit assessment on or before the first day of the month following the date of the notice thereof is hereby *ipso facto* suspended and his benefit certificate is "absolutely null and void during such suspension" (46), that the clerk of the local camp shall report all members who fail to pay any assessment when due to his camp and to the head clerk as delinquent and suspended, and that the head clerk shall immediately notify every such member of his suspension and inform him of the requirements necessary for his reinstatement (260, 264, 114), and that any suspended member in good health may be reinstated within sixty days

from the date of suspension by paying all arrearages due and fines, having his written warranty that he is in good health (49).

It appears that the deceased member had, during the thirteen months preceding his death, paid ten assessments, and that several of these between the first and twenty-eighth of the month, and after the suspension had, *ipso facto,* taken place, had been paid to the clerk of the local camp by the deceased without the production of the health certificate. The uncontradicted evidence was to the effect that the clerk of the local camp of which deceased was a member, with those of other camps in Kansas City, were in the habit of accepting assessments and dues without requiring the production of the health certificate at any time before the report of the clerk to the head camp had been forwarded. And further that from ten to twenty-five per cent of the members usually paid their assessments and dues between the last day they were due and payable and the day on which "pass report" was sent in to the head camp.

The defendant put in evidence a copy of the official paper of the society containing the notice of assessment No. 1, series 1899, in which the head clerk directed the local clerks to settle up all old accounts and not to advance assessments for members who are always and forever careless about making payments. And in the same paper there was an editorial notice to the effect that "if you have fallen in the habit of paying your assessments and dues after they are due, swear off and turn over a new leaf."

It further appears from the evidence that the head physician and deputy head consul for the State, were members of the same local camp as deceased, had made default in the payment of some of their assessments and afterwards paid the same to the clerk of the camp without the production of the health certificate. It was also further shown that the head consul, who had general supervision of the affairs of the de-

fendant, and the general attorney, a member of the board of directors, had, during the existence of the said custom in the local camp to which deceased belonged, visited it.

It is conceded that on the tenth day of February, 1899, the date of the death of the said Hopkins, that ho had then been in default in the payment of said assessment No. 1, series 1899, since the first of that month and that according to the strict terms of the by-laws of the defendant, his certificate stood suspended.

The method uniformly pursued by the clerk in making collections during the time Hopkins was a member of the camp was about this: The assessments were due on or before the first of the respective months specified in the notices calling them. The clerk did not send his report of collections under any assessment to the head clerk or remit the proceeds to the head banker until the twentieth day of the month, on the first day of which it was due, and he invariably received from any delinquent member without any certificate of health the assessment levied upon him if he paid it after the first at any time before he sent it away; which was usually from the twentieth to the twenty-eighth, and never reported or treated such delinquent member as either delinquent or suspended.

At the conclusion of all the evidence adduced at the trial, the defendant requested a peremptory instruction which was by the court refused, and this action of the court is assigned as error. Included along with defendant's peremptory instruction were others, one of which (the ninth) told the jury that if the said Hopkins, at the time of his death, had not paid said assessment due February 1, 1899, the verdict should be for the defendant, unless it found from the evidence "two facts; first, that the defendant order, by a custom and practice existing in the local camp to which Hopkins belonged in his lifetime, and known and recognized by both defendant order (that is the officer or officers of the head camp having charge

of the matter) and by Hopkins, and relied upon by Hopkins, had waived the payment of assessment No. 1, series of 1899, by said Hopkins within the time fixed by said notice and defendant's laws."

I. It is suggested by the plaintiff that the defendant is in no situation here to insist on a review of the action of the trial court in refusing its said peremptory instruction, since it had by the ninth of its series requested a submission by the court of the controverted issues of fact in the case. It can not be allowed here to occupy a position inconsistent with that occupied by it before the trial court. It occupies the strange attitude here of asking us to condemn and find fault with the action of the trial court for doing exactly what that court was requested by it to do. If that court committed error in submitting the case to the jury, it was error which was invited by the defendant. Appellate practice of this kind has been disallowed and condemned by various forms of expression, as may be seen by reference to the adjudications, among which are: Jennings v. Railway, 99 Mo. 394; Fenwick v. Bowling, 50 Mo. App. 516; Mercantile Co. v. Burrell Sisters, 66 Mo. App. 117; Seiter v. Bischoff, 63 Mo. App. 157 (l. c.) 160; Hartman v. Railway, 48 Mo. App. 619; Randolph v. Frick, 57 Mo. App. 400; Bray v. Seligman, 75 Mo. 31; Minton v. Steele, 125 Mo. 181.

As the defendant, at the trial in the court below, in effect practically admitted and conceded that there was sufficient evidence adduced to require the submission of the issues to the jury, it can not on its appeal here be allowed to shift its position and claim to the contrary, even though such evidence be slight. It follows, therefore, that the questions sought to be raised by its first assignment of error are not before us for consideration.

II. The defendant further objects that the trial court erred in its action in modifying its (defendant's) third and fourth instructions, because such instructions as modified were calculated to mislead the jury. The defendant's fourth, the

enunciation of which was along the same lines as its third, told the jury that if it believed from the evidence in the case that plaintiff's son, George A. Hopkins, failed to pay assessment No. 1, series 1899, after receiving the notice prescribed by the laws of defendant·order, and on or before February 1, 1899, then from that date he stood suspended under defendant's by-laws to which he had subscribed, and by which he was bound, and the officers of local camp No. 3663 had no authority or power under the rules of defendant to receive, after said first day of February, said assessment, unless same were accompanied by a warranty or certificate of good health of said George A. Hopkins; unless it further believed from the evidence that the prompt payment of such assessment, accompanied by a warranty of good health properly signed by such member in person, was waived as predicated in the instruction given it for the plaintiff.

That of plaintiff so referred to was to the effect that if it believed from the evidence that prior to the death of the said George A. Hopkins the defendant received payments of assessments from the said George A. Hopkins, and from other holders of similar benefit certificates, after the date on which such assessments became due, according to the terms of the said certificates and the by-laws of the defendant corporation without requiring a warranty of health from such member signed by himself in person showing him to be in good health at the time of such payment, and by its course of dealing, practice, custom and conduct, if any, with reference to such certificates and the payment of assessments required by the terms of such certificates and its by-laws, and prior to February 1, 1899, had reasonably led the said George A. Hopkins and the plaintiff to believe, and they did believe, that the defendant would not insist that assessments be paid strictly on the date fixed by the terms of the said certificates and by-laws, but that defendant would receive and accept such assessments if paid within a reasonable time after such dates,

without requiring warranty of health from such member signed by himself in person, showing him to be in good health at the time of such payment, and if it believed from the evidence that the said George A. Hopkins and the plaintiff herein relied upon such conduct, with reference to the assessment falling due February 1, 1899, and that the said assessment falling due on February 1, 1899, was tendered to the defendant within a reasonable time after that date, although it was not accepted by the defendant, then its verdict should be for the plaintiff, and for the sum of nineteen hundred and ninety-nine dollars and twenty cents, with interest from July 31, 1899, to this date, at the rate of six per cent per annum.

The plaintiff's said instruction and the defendant's third, fourth and eleventh, when taken and considered as one charge, so clearly present every phase of the case as to leave no ground for the defendant's complaint.    It seems to us that it would be an unwarrantable reflection upon the intelligence of the jury to assume that it would be misled by such instructions.

III.    The defendant objects further that there is an irreconcilable conflict between the instruction of the plaintiff and that of defendant in respect to the tender of the assessment due February 1, 1899.    It is not disputed but that the amount of this assessment was tendered to the clerk of the local camp on February 17, 1899, seven days after the death of said Hopkins and within the currency of the time in which said assessment was payable under the established custom of the local camp, if there was any such custom, and before the pass report had been sent to the head clerk.    The supposed conflict is of no consequence.    It is quite obvious that the tender was made both within the time prescribed by the custom and within a reasonable time.    The tender disclosed by the evidence met the requirement of both rules, and no injury could result to the defendant from the finding of the jury, whether under one instruction or the other.    In view of the undisputed evidence as to the tender, the supposed conflict

in the instructions affords no sufficient ground for disturbing the judgment.

IV.   It appears from the record that during the cross-examination of witness Adams by the defendant, the following questions were asked and answered:

"Q.   So far as you know, and so far as you knew at the time, the head camp or none of the officers had any knowledge of what was going on in your camp, had they.   A.   Well, that is a pretty hard question to answer.   Q.   You testified in the Tevis case?   A.   Yes, sir.   Q.   You used to be in Mr. Scarritt's office?   A.   Yes, sir.   Q.   You have always taken a great deal of interest in this case?   A.   Well, I have been a witness in it; I simply testified to what I believe are the facts irrespective of anything else.   Q.   You were a witness when the case was formerly tried?   A.   Yes, sir.   Q. You were a witness in the Tevis case?   A.   Yes, sir.   Q. You testified in that case?   A.   Yes, sir.   Q.   Now, didn't you testify in that case in the United States Circuit Court up here, that there was nothing in your report that indicated any irregularity in your practice?   A.   I did, and I am testifying to that now.   Q.   Didn't you testify at that time, so far as you knew, you knew at that time, last summer, when you testified, that no officer of the head camp ever knew anything about the irregularity of your practice?   A.   I don't know that I testified to that or not.   Q.   I want to refresh your recollection?   A.   I may have testified to that.   Q.   Isn't it a fact, so far as you know, that none of them knew anything of it prior to the death of Mr. Hopkins?   A.   I don't know, of course, any more than if they know of the workings of the order by going around and looking from one camp to another, visiting; if they are men of intelligence, why they ought to know the workings of the order; I don't know anything more than that."

The defendant moved the court to strike out the last answer of the witness on the ground that it was argumentative

and a voluntary statement of the witness, but which motion was denied. The answer was, in part, responsive to the question propounded by defendant. The motion was not limited to the "volunteer and argumentative" part of the answer of the witness, but to the whole of it. If a cross-examiner, by his question, calls forth an answer which is in part responsive to the question and part not so, as here, he is not entitled, on a general objection thereto, to the exclusion of the entire answer. He must direct his motion to the objectionable part only; otherwise it will be properly denied.

It appears that the witness had been subjected to a very galling and irritating cross-examination, and while we can not say but that the latter part of his answer was proper and not subject to the objection urged against it, still, as no proper steps were taken to exclude it, we can not find fault with the court for refusing to strike out the entire answer, nor hold that it was such an error as is fatal to the judgment.

The judgment will be affirmed. All concur.