CITIZENS SAVINGS BANK, of Cedar Falls, Iowa, Appellant, v. MARR, Administrator of the Estate of GIBSON, Respondent.

**St. Louis Court of Appeals, February 4, 1908.**

PAYMENT: Mortgages and Deeds of Trust: Absolute Deed as Security. The payee of certain promissory notes transferred them to a bank and afterwards procured from the maker of the notes a deed to certain real estate with an agreement that the conveyance was made in payment of the notes and other notes held by another bank. The original payee of the notes then conveyed the land to the officers of both banks, telling them that the land was taken as security for their several debts; neither bank had any knowledge of the side agreement that the land should be taken in payment of the debts. The two banks took possession of the land, paid taxes on it, collected the rents, paid interest on a prior mortgage. *Held*, in an action by the first-mentioned bank on the notes against the estate of the maker, that taking the land under the circumstances did not constitute payment, but the absolute deed was a mortgage; that the collecting of rent and exercising other acts of ownership was not inconsistent with that relation; that plaintiff, having no knowledge of the side agreement between the maker and the payee of the notes, could not have been held to ratify it and was not bound by it.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby*, Judge.

REVERSED AND REMANDED (*with directions*).

*Ragland & McAllister* for appellant.

*J. M. Crutcher, R. N. Bodine* and *James P. Boyd* for respondent.

BLAND, P. J.—H. H. Clay and T. F. Murray, in 1902, were partners dealing in horses under the firm name of Clay & Murray, in Cedar Falls, Iowa. On January 18, 1902, Douglas S. Gibson, of Monroe county,

Missouri, bought two horses of Clay & Murray for the sum of $2,500, for which he executed to said firm his three promissory notes, dated January 18, 1902; one for $834, due August 1, 1903, and two for $833, each due August 1, 1904 and August 1, 1905, all of which notes drew interest from date at the rate of six per cent per annum. Immediately after receiving the notes Clay & Murray indorsed and sold them to the Cedar Falls National Bank. On February 10, 1902, Gibson bought two other horses from Clay & Murray for $2,500 and gave the firm his three promissory notes for the purchase price; one for $800, due August 1, 1904; one for $800, due August 1, 1905, and one for $900 due at an earlier date. These notes also bore six per cent interest per annum from date and were immediately indorsed by Clay & Murray and sold to the State Bank of Cedar Falls, Iowa. Later on this bank, with its assets, including the three notes, was taken over by the Citizens Savings Bank of Cedar Falls, the plaintiff herein. On November 23, 1903, Gibson, Clay and Murray appeared at the Cedar Falls National Bank and took up the note for $834, dated January 18, 1902, and paid the interest on the other two notes of the same date, by Gibson executing a new note for $1,066.50, payable to Clay & Murray, which was indorsed and delivered to the bank. (Their indorsement was required to continue their liability as indorser for the original note.) On the same day Gibson went to the State Bank of Cedar Falls and took up the note of February 10, 1902, for $900 and paid the interest on the two $800 notes of the same date, by executing two new notes for $583.97, each due in thirty and sixty days. These notes were also made payable to Clay & Murray and were indorsed by them so as to continue their liability as indorsers. These two renewal notes and the two notes for $800 each dated February 10, 1902, are the notes in controversy. Gibson failed to pay these notes, or the notes held by the Cedar Falls National Bank when

they matured.   On October, 1905, the Cedar Falls National Bank placed the three notes it held in Murray's possession and instructed him to go to Missouri, where Gibson resided, and collect the notes or get them secured.   Murray came to Missouri and entered into negotiations with Gibson which resulted in Gibson going to Cedar Falls, where he delivered to H. H. Clay and T. F. Murray the warranty deed of Roy Gibson and wife, conveying to Clay & Murray three hundred and twenty acres of land in Monroe county, Missouri, subject to two deeds of trust, one for $8,500, the other for $2,700.   The deed to Clay & Murray recited that the grantees assumed the payment of these two deeds of trust.   The consideration recited in the warranty deed from Gibson to Clay & Murray is $17,600.   On the execution and delivery of this deed Murray marked the three notes held by the Cedar Falls National Bank "Paid" and delivered them to Gibson, and contemporaneously with the execution and delivery of the deed the following agreement was entered into:

"This contract made and entered into by and between D. S. Gibson and H. H. Clay and T. F. Murray, witnesseth: That the said Gibson having this day delivered a deed to said Clay and Murray for three hundred twenty acres of land in Monroe county, Missouri, in satisfaction of certain indebtedness due from him to the said Clay & Murray, it is agreed that the said Clay & Murray shall within thirty days deliver to the said D. S. Gibson his three certain promissory notes aggregating about twenty-nine hundred dollars, cancelled.

"Whereas the said land conveyed to Clay & Murray is subject to a certain mortgage or trust deed for twenty-seven hundred dollars with other lands belonging to said D. S. Gibson, now, if the said Gibson shall pay off any portion or all of the said twenty-seven hundred dollars to release his said land, then the said Clay & Murray agree to give to the said D. S. Gibson, or such

person as he shall name a trust deed on the 320 acres conveyed to them, but subject to a prior trust deed for $8,500, to secure to him such amount as he shall pay to release his said lands.

"It is further agreed that the rents of the lands conveyed to the said Clay & Murray shall belong to them from and after the fifteenth day of November, 1904.

"Dated November 12, 1904.

D. S. GIBSON.
H. H. CLAY.
T. F. MURRAY."

The three notes, referred to in the collateral agreement, which Murray agreed to deliver to Gibson in thirty days, represent the debt sued for in this action. Murray had the deed recorded in Monroe county and then deposited it with the Cedar Falls National Bank, and afterwards, to-wit, on November 21, 1905, Clay & Murray and their wives executed and acknowledged a general warranty deed, leaving the name of the grantee blank, conveying the Gibson land for the express consideration of $17,600, subject to the two deeds of trust mentioned in the deed from Gibson to Clay & Murray, and deposited this deed with the Cedar Falls National Bank. Gibson died in March, 1906, and defendant is the administrator of his estate. Plaintiff presented the notes in suit to the probate court of Monroe county for allowance against Gibson's estate. In due course the cause was appealed to the circuit court where, on a trial *de novo* to a jury, the verdict and judgment were for defendant. Plaintiff filed a timely motion for new trial which the court overruled, whereupon plaintiff perfected its appeal to this court.

The defense interposed at the trial was payment of the notes by the conveyance of Roy Gibson and wife to Clay & Murray of the three hundred and twenty acres of land in Monroe county. Plaintiff's contention is that, that conveyance was made and accepted as security

for Gibson's notes which were held by the two banks at the time of the execution and delivery of the deed to Clay & Murray. It appears from Murray's evidence that plaintiff had no knowledge or notice of the execution by Roy Gibson of the deed, or of the deed from Clay & Murray, until some months after they were executed and deposited with the Cedar Falls National Bank; it also appears from his evidence and the evidence of the chief officer of the Cedar Falls National Bank, that neither plaintiff or any officer of said bank had any knowledge or notice of the collateral agreement between Clay & Murray and Gibson until after this suit was commenced in the probate court. Murray testified that the Gibson deed was taken as security and that it was agreed between himself and Gibson that the land should be sold as soon as possible and that Gibson should receive whatever sum it sold for over and above the deeds of trust and the debts Gibson owed the two banks, and that from what Gibson told him he expected the land would be sold in a very short time and for this reason he left the name of the grantee in the deed made by himself and Clay blank; that he told the president of plaintiff bank about taking the deed from Gibson sometime after it was executed, and also of the deed made by himself and Clay before the names of the grantees were written in the deed, and that the deeds were deposited and held as security for the debts of both banks. The names of C. H. Rodenback and H. N. Silliman were written in the deed as grantees about July 1, 1905, and the deed was then forwarded to Monroe county for record. Rodenback is president of the Cedar Falls National Bank and Silliman is the vice-president of the plaintiff bank. Murray and Rodenback both testified that at the time the names of Rodenback and Silliman were written in the deed, both deeds were spread out before them and they took the conveyance for and on behalf of the two banks, with the understanding that each bank should

have an equal interest in the conveyance as security for the notes held by the two banks, and that each bank should bear an equal portion of all necessary expense to make good the security; that at the time the banks furnished $200 each to pay interest then overdue on the deeds of trust and subsequently the two banks jointly paid off the deed of trust for $2,700. The banks took possession of the land and rented it to tenants, collected and appropriated the rents and paid the taxes, offered the land for sale and tried to find a purchaser for it. The evidence tends to show the plaintiff bank had nothing to do with getting the deed from Gibson and did not know it had been made until sometime after its execution and deposit with the Cedar Falls National Bank; it also tends to show that the Cedar Falls National Bank did not know at the time the deed was made that the plaintiff held any of Gibson's notes on which Clay & Murray were indorsers, and that there was no co-operation between the two banks in respect to the matter until July 1, 1905. Murray, however, testified that he took the deed from Gibson for the benefit of both banks, and that his purpose was to secure all the Gibson notes on which he and Clay were liable as indorsers. All the evidence shows that as far as the plaintiff bank is concerned, Murray acted on his own initiative in procuring the deed from Gibson; that plaintiff was wholly ignorant that Murray had agreed with Gibson to deliver up its notes in thirty days and was unaware of the existence of the collateral agreement, stipulating for the delivery of these notes, until the agreement was produced in evidence on the trial. Murray testified that he told the officers of both banks that the Gibson deed was taken as security, with the understanding that the land should be sold for the purpose of paying the deeds of trust on it and the notes held by the two banks.

At the close of the evidence, plaintiff moved the court to instruct the jury that under the law and the

evidence the verdict should be for plaintiff. The refusal of this instruction is assigned as error. We think the instruction should have been given. The evidence is all one way that Murray was not the agent of the plaintiff bank when he took the deed from Gibson; and that the bank was totally ignorant of the fact that he had procured the deed until months after its execution and deposit with the Cedar Falls National Bank, therefore, the agreement of Murray with Gibson, to secure the plaintiff's notes and deliver them to him in thirty days, was not binding on the plaintiff unless, after being apprised of the agreement, plaintiff ratified it. The evidence shows that none of the officers of plaintiff bank had any knowledge or notice of this agreement until it was produced at the trial, therefore, there is no evidence of any express ratification. But it is insisted by defendant that plaintiff bank and the Cedar Falls National Bank, by accepting the warranty deed to Clay & Murray, with knowledge of the contents of the deed from Gibson to Clay & Murray, by taking possession of the land and collecting the rents and profits thereof and converting the same to their own use, by paying the taxes on the land and the interest on the deeds of trust, and by paying off one of the deeds of trust and offering the land for sale, plaintiff accepted an absolute conveyance of the land and is bound to account for its proportion of the purchase price, recited in the deeds to be $17,600, and shown to be about the amount due on both deeds of trust, plus the amount due on all the notes held by the two banks at the time the deed was executed. There was enough on the face of the two deeds to put plaintiff on inquiry in respect to the consideration and in what manner it was to be, or had been paid. The evidence shows that plaintiff made inquiry of Murray, the person who made the contract with Gibson and who possessed correct information in regard to the transaction. Murray, as he swore, informed the officer of the plaintiff

bank that the Gibson deed was taken to secure the notes due it and the National Bank of Cedar Falls, and that the agreement between himself and Gibson was that the land should be sold and out of the purchase price the two deeds of trust should first be paid and then the notes held by the two banks and whatever balance remained, if any, should be paid to Gibson; in other words, though the deed from Gibson was absolute on its face it was in fact given and accepted merely as security for the payment of Gibson's notes. There is absolutely no evidence to the contrary and we cannot see upon what principle of law or justice, with these facts before it, the plaintiff can be held to have ratified the contract between Murray and Gibson, as expressed in the collateral agreement, of which it had no knowledge or information. Plaintiff accepted the conveyance from Clay & Murray on an essentially different understanding, that is, that the two banks should sell the land and apply the proceeds to the payment of the encumbrance and the Gibson notes, the balance, if any, to go to Gibson. Taking possession of the land and collecting the rents was not inconsistent with the terms upon which plaintiff claims to have accepted an interest in the Clay & Murray conveyance. The payment of interest on the deed of trust was necessary to the preservation of plaintiff's security; so was the payment of one of the deeds of trust, as it appears from the evidence the debt was overdue and payment was demanded by the holder. There is no substantial evidence in the record that the Clay & Murray deed was accepted by plaintiff bank as and for payment of the notes in suit; for this reason the defense wholly failed and the court should have directed a verdict for plaintiff. Wherefore the judgment is reversed and the cause remanded, with directions to the trial court to enter judgment for plaintiff for the amounts due on the notes in suit and to certify such judgment to the probate court for allowance and classification against Gibson's estate.