JOHN H. BERKSHIRE, et al. Respondents, v. IRMA
H. HOLCKER, et al., Appellants.

Kansas City Court of Appeals, June 16, 1919.

1. MECHANIC'S LIEN: Agency: Husband and Wife. In order to
establish a mechanic's lien claim against property owned by the
wife through a contract made with the husband it must be shown
that the husband was the wife's agent, and the mere passive ac-
quiescence of the wife in permitting the husband to make the
improvements upon the land does not establish the agency as a
matter of law.

2. ———: ———: Estoppel. In the absence of a showing that the
wife knew the husband was making a loan secured by a deed of
trust to the wife's property for the purpose of making the im-
provements upon the land, and the absence of dealings between
the wife and third persons, the wife is not estopped from denying
the agency.

3. ———: ———: Instructions. An instruction which directed the
jury that if the husband made the contract, under which plaintiffs
claim their liens, for and on behalf of himself, he was not acting
as his wife's agent, and that the sole issue in the case was whether
or not the husband in making such contract was his wife's agent,
was not erroneous as narrowing the issue.

433

28—Mo. App.

4. ——: ——: ——. It was not error to refuse an instruction to the effect that if the husband were "authorized" by the wife to erect the improvement in question, he was acting as her agent as the term "authorized" standing unexplained does not indicate the existence of an agency.

5. ——: ——: Conflicting Evidence. Where there is evidence tending to show either way on the question of agency it is proper to submit the issue to the jury, and the court is bound by the finding of the jury under section 8235f, Laws 1911, page 316, subject to its power to grant a new trial where the evidence as a matter of law indicates a finding contrary to that of the jury.

Appeal from Jackson County Circuit Court. —*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Ellis, Cook & Barnett* and *Numa F. Heitman* for respondents.

*Scarritt, Jones, Seddon & North* for appellants.

TRIMBLE, J.—Plaintiffs are a copartnership engaged in business under the name of the Berkshire Lumber Company. The firm, as one of several lien claimants, brought this action under sections 8235a to 8235g, Laws 1911, p. 314, to establish a materialman's lien against real estate owned by defendant, Irma H. Holcker, wife of the defendant Otto Holcker. The other lien claimants were made parties and filed their respective petition wherein each of them, like plaintiffs, set up a right to a lien against the property on the ground that they furnished material to one, Brown, who had a written contract with the husband, Otto Holcker, for the erection of the improvements involved.

In order to establish their liens, it was necessary for the lien claimants to show some agency connection, in the nature of a moving cause, reaching from the improvements back to the owner of the land; and, as the only right or authority Brown had from any one to go upon the land and erect the improvements was the

written contract signed by himself and Otto Holcker, and as none of the lien claimants had any basis or authority whatever for the furnishing of material except their contracts with Brown, the only way in which any connection reaching back to the owner could be established was to show that Otto Holcker in making the contract with Brown was acting for and on behalf of his wife and as her agent within the meaning of that term as used in the lien statutes. The various lien claimants, therefore, charged in their respective petition that Otto Holcker, in contracting with Brown for the erection of the improvements, did so as the agent of his wife. This was denied by each of the Holckers. On the contrary, they asserted that Otto Holcker made the contract in fact, as it appears to be on its face, for himself individually.

Thereupon all of the lien claimants, pursuant to section 8235f, Laws 1911, p. 316, filed a joint motion, alleging that "there is an issue of fact in this case which is common to all the mechanic's lien claimants who are parties to this action" and that the issue of fact referred to was whether or not Otto Holcker was the agent of Irma Holcker, his wife, in the erection of the building described in the pleadings, and moved the court to frame said question into an issue of fact and submit it to a jury.

This motion the trial court sustained and an issue was written and submitted whereby the jury was required to find whether the husband was the wife's agent to erect or cause to be erected, the improvements in controversy. After a trial the jury returned said issue with their verdict stating that they "find the issues for the defendants and answer said question 'No.'"

The lien claimants' motions for new trial were sustained by the court on the sole ground that error was committed in giving instruction No. 6 for defendants, and they have appealed from that order.

Said instruction No. 6 told the jury that the sole issue (submitted by the court as above stated), for their

determination was whether the contract in evidence between Otto Holcker and Brown (the contractor), was entered into by Otto Holcker for and on behalf of himself, or by said Otto Holcker for and on behalf of his wife, Mrs. Irma Holcker, if the jury believed from the evidence that the contract betweenn Otto Holcker and said Brown was made and entered into by said Otto Holcker for an on behalf of himself and as his own individual contract, then the verdict should be that said Otto Holcker was not the agent of Mrs. Irma Holcker. It is said that this instruction narrowed the issue. We think it did not. It states the very issue formulated by the court at the request of the lien claimants and to which no objection was offered either to its scope or form. None of the lien claimants make any claim that they furnished any labor or material directly to either Mr. or Mrs. Holcker; but all claim that they furnished it to Brown the general contractor. It is udisputed and beyond question that the only right or authority Brown had from anyone to go upon the land and erect the improvement was the written contract in evidence signed by himself and Otto Holcker. As hereinbefore stated, there was no connection of any sort between Mrs. Holcker and the general contractor, Brown, or between her and any of the lien claimants; there was no connection between Otto Holcker and any of the lien claimants giving them authority, even from *him,* to furnish material for the improvements save and except the contract he made with Brown. Consequently the only route, by which any possible connection between the lien claimants and the owner could be traced, lay through the contract between Otto Holcker and Brown. This being so, then unless it was shown that Holcker, in contracting for said improvements, did so for and in behalf of his wife, there was no relationship of any kind established between the lien claimants and the owner, Mrs. Holcker. It cannot be said that the effect of the instruction upon the minds of the jury was to withdraw from their consideration the evidence covering the gener-

al aspects of the question whether or not the husband was acting in his wife's behalf—i. e., with her active volition and consent as a moving cause in procuring him to erect the improvements for her—because the instruction in no way deals with the evidence to be considered by the jury in order to determine the issue submitted; and the jury were told in plaintiffs' instruction No. 4 that in arriving at their verdict they were not required to find that there was any formal written authority from the wife to the husband to enter into a contract with Brown for the erection of the improvements, "but in determining whether the defendant Otto Holcker was authorized by his wife, Irma Holcker, to erect or cause to be erected the building and garage upon the real estate in question, you shall take into consideration all of the facts and circumstances in evidence." So that we are unable to perceive any error in said instruction No. 6.

But it is true, as stated by claimants, that if there is any other error in the trial, of which complaint has been made in their motions for new trial, advantage may be taken of it to justify the granting of the new trial, even though it was not mentioned by the trial court. [State ex rel. v. Thomas, 245 Mo. 65.]

Among these other allegd errors is the one that the lien claimants' refused instruction No. 1 should have been given. The refusal, however, is fully justified because said instruction 1 is wholly covered lien claimants' instruction No. 4 hereinabove mentioned. Besides, instruction No. 1 submitted solely the bare hypothesis whether the husband "was *authorized* by his wife to erect or cause to be erected the building and garage upon the real estate in question," and if so, then the jury should answer the question submitted to them in the affirmative; and the court could well have refused the instruction on the ground that, under the pecular state of the evidence as to the wife's knowing that the husband was building the house and was passively willing to allow him to do so, the instruction should

not have used the word "authorized," standing alone and unexplained, as though it meant an agency even within the meaning of the lien statutes, which at least requires that some active element in the nature of a moving cause should emanate from the owner to the one making the improvements before the owner's land can be affected by a lien. By the wife's passive permission and consent the husband would be "authorised" in the sense that he would not be a trespasser, and yet there would be no element of agency, within the meaning of the lien statute, emanating from the wife to the husband, as an active and moving cause on her part, to procure the erection of the improvements. And unless there was at least this sort of an agency existing between the owner and the husband, there is no ground for a lien on the owner's land under our statute, as we will hereinafter show in dealing with the question of whether the lien claimants were entitled to a directed verdict, as is now asserted by them on appeal. There was no question but that the wife did passively allow the husband to build the house, he using his own property and means to pay therefor; and, therefore, the court might as well have given a peremptory instruction as to have given the one under consideration, for the jury would have been led to believe that as the husband was authorized by his wife's mere passive consent, this was sufficient to afford foundation for such agency as is necessary and requisite to the establishment of a lien. Lien claimants cited Holland v. McCarty, 24 Mo. App. 112, where the word "authority" was held a proper word without explanation of what it meant. But the word was there used in connection with the question whether an architect ordered the plaintiff to do some extra work "without authority" from McCarty the owner. In that connection, and as applied to that evidence, the word was plain, with but one meaning, and with no possible ground of misunderstanding; but as applied to the evidence in the case at bar, it was susceptible also of the meaning hereinbefore noted.

It is also claimed that the court erred in striking out a part of lien claimants' instruction 5 before giving it. The instruction was to the effect that although Otto Holcker paid out nearly $9000 of his own money on account of the building and although the contractor may have failed to use some of the money which was paid him for the building, yet you are instructed that such facts of themselves do not constitute any defense as against the lien claimants. To the instruction, as offered, there were also the words, "and you will not let such facts influence you one way or the other in answering the questions submitted to you;" but the court in the presence of the jury struck them out. There was no error in this. The instruction as given was full and complete without such addition, and the action of the court in no way tended to prejudice the jury.

In addition to the complaint as to defendants' instruction No. 6, each of the others given for them is objected to. They relate principally to the fact that knowledge and no objection by the wife to the erection of the house by the husband, standing alone, did not make him an agent. These objections are sufficiently disposed of in what we have written and in what is hereinafter said upon the subject of whether lien claimants are entitled, as a matter of law, to a finding and judgement that the husband was the wife's agent, which the lien claimants now contend for and assert we should direct.

Upon this feature of the case it is to be observed that there was no attempt to show any express agency; there was no evidence of any original authority emanating from the wife, as a moving cause, to the husband or to anyone else, to erect the improvements. The agency attempted to be shown and relied upon is an agency implied from facts and circumstances. For the purposes of this case, we may concede that, notwithstanding the contract purports on its face to be made by the husband for himself, there is evidence tending to show that he made it for his wife as her agent. This consisted of

facts showing that the wife knew the house was being built on her land, that she visited it in the course of construction, that at his request she looked over the plans and made suggestions, and that she signed a note and deed of trust securing a loan on the land which the husband obtained to be used on the house, and that finally upon the abandonment of the job by the contractor and after the husband had with his own funds completed the house, he with his wife and family moved into and occupied the house as a home. However, according to the evidence in defendant's favor, the wife did not know she was signing a deed of trust on her land but thought she was signing some papers in her husband's business.

On the other hand, there was the evidence of the contract itself and the defendant's evidence that no agency existed between them in reference to the house; that on the contrary the husband was, himself, building the house as a residence, putting in his own property in payment thereon (which fact appears on the face of the contract), and also putting in more money than he borrowed; and, as stated, that the wife did not knowingly sign a deed of trust on her real estate.

On account of the peculiar nature of the relation between husband and wife and the commonly performed duty of the husband to provide a house for their home and joint occupancy, it by no means conclusively follows that she has made him her agent to build a house for her because she knows he is building the house on her land, and that she shows interest in the construction of the house and, at his request, looks over the plans and makes suggestions. Anything short of that wifely interest would be unnatural, and it can all exist in entire consistency with her disclaimer of having made him her agent to build the house for her. It may aid the jury along with other things in making up a verdict but that is all. [Keunzel v. Stevens, 155 Mo. 280; Planing Mill Co. v. Brundage, 25 Mo. App. 268; Cement Co. v. Elser, 156 Mo. App. 291.] In the first

of these cases the Supreme Court, at page 287 of the report, said that, "Undoubtedly a husband may make a contract in his own name and on his own credit to improve his wife's property without rendering it subject to .a mechanic's lien for the cost. But when a party has furnished materials towards the building and the question as to his right to a lien depends on the fact as to whether the husband undertook the work on his own credit or that of his wife for whose benefit the improvement inures, there is no reason why the question should not be settled by a fair preponderance of the evidence, the burden of proof of course being upon him who asserts the agency, and due caution being observed to distinguish between wifely deference and business conduct, when inferences from her acts are to be drawn."

So, therefore, since there was evidence tending to show either way on the question of agency, we think it was proper to submit the question to the jury to determine. And this course is authorized by section 8235f, Laws 1911, p. 316, which also provides that the court "shall be bound by the findings of the jury thereon in the further proceedings in said cause, subject to the power of the court to grant new trial of such issues." Of course, this provision of the statute does not forbid the setting aside of the jury's verdict if the evidence shows, as a matter of law, that there was an agency existing between the wife and the husband. And the above quoted provision of the statute is cited only for the purpose of answering the suggestion that since the 1911 Act denominates the suit "an equitable action," we may treat the jury's verdict as advisory only and pass upon the weight and credibility of the evidence for ourselves as we are permitted to do in the case of a suit in equity purely. Under this statute, however, unless the evidence does show, as a matter of law, that an agency existed between the wife and the husband, we have no more authority to disturb the verdict than in any other law case.

Upon the question of whether the evidence shows agency as a matter of law, it is to be observed, in the first place, that the lien claimants at the trial conceded that the matter of the husband's agency was a question for the jury for they did not offer a demurrer to defendants' evidence nor ask a peremptory instruction, but joined in asking instructions on the disputed issue, and without objection submitted it on the evidence to the jury, called at their request. [Kenefick-Hammond Co. v. Norwich, etc., Ins. Society, 205 Mo. 294, 312; Hanson v. Boyd, 161 U. S. 397, 402; Hartford Ins. Co. v. Unsell, 144 U. S. 144, 451; Boone Co. Lumber Co. v. Niedermeyer, 187 Mo. App. 180, 186.]

But aside from, and in addition to this admission, we cannot bring ourselves to agree with lien claimants' contention that we should now declare, as a matter of law, that the husband was acting as agent for his wife and with her authority, established by implication arising on the facts. Such claim is, in effect and as applied to the evidence, that if Mrs. Holcker knew of the erection of the house by her husband, and merely permitted it and consented thereto, she thereby made him her agent with such power in him which, while it would not bind her *personally* to pay for the improvements, nevertheless, was sufficient to bind her property to the payment of a mechanic's lien. In some States, the statute makes consent of the owner sufficient (Zeigler v. Galvin, 45 Hun. 44, 48) but that is not our statute. And we do not understand the authorities to hold that under our statute, or under statutes similar to ours, mere consent or acquiescence will furnish the necessary agency connection to support and uphold a lien. [Kuenzel v. Stevens, 155 Mo. 280; Planing Mill Co. v. Brundage, 25 Mo. App. 268; Halliwell Cement Co. v. Elser, 156 Mo. App. 291; Hoffman v. McFadden, 56 Ark. 202; Gilmar v. Disbrow, 45 Conn. 563; Conway v. Crook, 66 Maryland, 291; Jones v. Walker, 63 N. Y. 612; Campbell v. Jacobson, 145 Ill. 389; 2 Jones on Liens, secs. 1262, 1263, 1265.]

In support of the contention that we should declare that an agency existed as a matter of law, the cases of Ward v. Nolde, 259 Mo. 285, and Boeckler Lumber Co. v. Wahlbrink, 191 Mo. App. 334, are cited, the decision in the latter case bearing the approval of the Supreme Court after certification to that tribunal from the St. Louis Court of Appeals. [208 S. W. 840.]

Clearly the case of Ward v. Nolde, 259 Mo. 285, is not applicable to the case at bar. In that case the owner of the property bound the tenant, by bond and a written lease, to make improvements for him, the owner, which improvements were specified and approved by the owner. But more than that, that case, pages 302, 303, decides that mere acquiescence by the owner in the act of the party making the improvement whereby he contracted with the builder for extras, will not establish an agency, and that too where there was evidence which tended to show the owner knew of the extras before they were put in. Again, at pages 297-8 of said Ward case, the Supreme Court held that even in a case where there was no marital interest to consider, that these things would be circumstances which, "would no doubt have an important bearing upon the case as throwing some light upon the character of the relationship between Delaney and Nolde (owner and alleged agent) and would therefore be a circumstance that should be taken into consideration in determining whether Nolde was his agent within the meaning of the statute." And at page 300 the court quotes with approval from the opinion of JOHNSON, J., in Curtin-Clark H. Co. v. Churchill, 126 Mo. App. 462, that mere consent of the owner to an improvement by the tenant will not make him an agent.

The Boeckler case, on the facts there disclosed, is not in conflict with our decision in this case, because of a substantial difference in the evidence. In that case the *wife testified* that she *knowingly assisted* in borrowing the money *for the purpose of finishing the building;* while in the case before us there was strong testimony that the wife "had nothing to do with the plans, and

never talked with the contractor; that the house was
her husband's'" that "it was my lot and Mr. Holcker's
money:" that her husband did not ask her permission
or consent; that she did not know she was signing a
deed of trust to obtain money; that she signed some
papers without knowing what they were because she was
asked to do so and had every confidence in her husband.

Again, it is manifest that the Boeckler case was not
only decided upon different evidence, but on different
issues from · those presented by and involved in the
trial of this case. The holding in the Boeckler case
was that "on the facts here in evidence and which we
have summarized, it is clear, as a matter of law, that
the wife is *estopped from denying the agency* of her
husband in the erection of the house." (Italics ours.)
[191 Mo. App. l. c. 343.] In the case at bar the question
of estoppel was not in issue, since estoppel was never
pleaded. In addition to this, the facts are not sufficient
to create an estoppel· as a matter of law, against Mrs.
Holcker. Furthermore, the court, in the Bockler case
(pp. 341, 342), in speaking of the wife having made the
husband her agent, notwithstanding her denial that she
had, says: "She went with her husband to the bank to
sign the notes and deed of trust, *knowing* that they were
to be used to raise money to finish the building. Her
husband *told her* that that was the purpose for which
he was raising the money and she made no objection to
pledging her property . . . to the bank to raise
this money." (Italics ours).

In the Boeckler case the testimony as to the wife's
conduct and knowledge came largely from her own lips.
They were admissions; and for this reason the court
could pass upon her conduct as a matter of law. The
wife's knowledge in the Boeckler case was more than the
mere knowledge that her husband was building a house
on her lot; it was the knowledge that she was pledging
her property for the funds with which it was to be
built. In the case at bar· no such knowledge on the
wife's part was shown. At the time Mrs. Holcker sign--

ed the deed of trust the construction of the house had not begun and the record does not show that she knew at that time her husband had entered into a contract with Brown to erect the house. We note plaintiff's contention, in the last typewritten suggestion filed, that she did know. But it is manifest that it is only by taking widely separated statements relating to different matters, and combining them as if they were closely connected, that plaintiffs can even draw an *inference* that she did know of the contract at that time. Certainly it does not conclusively appear that she did. She was not told and did not know what papers she was signing or the purpose thereof or that her husband intended to use the proceeds to help build the house. It was urged at the oral argument that a person will not be allowed to deny the execution of a document they have signed, on the ground that they did not read it and did not know its contents. No doubt this is true under many circumstances, but this is not a case where the other party to the instrument is seeking to enforce it.

Although plaintiffs never pleaded estoppel, and in spite of the fact that by failing to demur to defendant's evidence or to ask a peremptory instruction on the issue involved, plaintiffs conceded at the trial that the question of agency was for the jury, nevertheless they now insist that the husband's agency for the wife was conclusively shown and that Mrs. Holcker is, as a matter of law, estopped from denying agency. It is a well established rule that litigants cannot on appeal assume a position directly contrary to that taken at the trial [Hopkins v. Modern Woodmen, 94 Mo. App. 402, 409.] But aside from this consideration, we are unable to see wherein we would be justified in holding that Mrs. Holcker is concluded as a matter of law. As heretofore stated, there were no dealings, relationship or connection of any sort between Mrs. Holcker and Brown or between her and any of the lien claimants in any way. Nothing of that sort is shown. No witness claims that he was misled or deceived by her conduct in any way.

The contention now urged by plaintiffs is that Mrs. Holcker's acts are so directly contrary to her claim that she did not know she signed a deed of trust on her property and did not make her husband her agent to build the house, that this court should now say, as a matter of law, that she shall not be heard to make such a defense. That there may be no room for thinking that we have overlooked any of the grounds for such contention, we here set forth the following facts in addition to those contained in what we have already said. The contract between Brown and Mr. Holcker provided that the former was to build the house for $9000; that Mr. Holcker was to convey to Brown the equity in his, Holcker's, residence at 3418 Prospect Avenue on the contract price; that Brown was to secure for Holcker a loan of $6000 on the lot (6200 Morningside Drive) on which the house was to be built, the expense of obtaining the loan to be paid by Holcker, and the proceeds of the loan to be assigned by Holcker to Brown and to be drawn by him as advances met with the approval of the loan company. Brown began the house the middle of October, 1913. The deed of trust involved herein was dated October 27, 1913, and acknowledged October 28th. It was from the Holckers to Pratt and Thompson Investment Company, beneficiary, securing to said Company a note for $6000 due 5 years after date. At the same time the deed of trust was signed, the Holckers also signed an order, dated October 27, 1913, addressed to Pratt an Thompson Investment Company to pay the proceeds of the loan to Brown. This order is known in the record as plaintiffs' exhibit 1. The evidence is clear and explicit that Mrs. Holcker, at the time she signed these papers, was not told what they were but was merely informed by her husband that here were some papers that he wished her to sign and that she immediately did so at his request not knowing what they were. No one testifies to the contrary. Out of the proceeds of the loan the sum of $216.53 was used to pay the expenses of obtaining same and for insurance on

the house during construction, and thereafter the Investment Company paid to Brown on October 31, 1913, the sum of $2000, on November 11, 1913, $1500 and on November 22, 1913, $500, making in all $4000 paid to Brown out of said loan. In December, 1913, or at least by the first of January, 1914, Brown abandoned the job without paying his bills except possibly those of the men who had performed manual labor thereon. Mr. Holcker thereupon borrowed money, purchased materials and completed the house himself, at an additional expense of nearly $5000. The house was completed June 20, 1914. None of the liens herein claimed are for materials or labor thus contracted for by Holcker himself in completing the house. Just how Brown succeeded in getting the Investment Company to advance him money on the loan to the extent of $4000 without paying his bills is not disclosed. Mrs. Holcker's evidence is that her husband, Mr. Holcker was "very sore" at Brown for having "fixed him" by "using up his money," and when asked by one of plaintiffs whose money did she understand Brown had used, she said it was Mr. Holcker's money and when asked further if she understood that *all* of the money Mr. Holcker put into the house was money of his own she said it was his own money. She was then asked if she knew anything about the mortgage on the house *or what became of the money that was raised by the mortgage* and she replied that she did not. No witness went on the stand and contradicted this evidence. After Brown had obtained $4000 of the loan from the Investment Company without paying his bills, another order addressed to the Investment Company was obtained, dated April 13, 1914, signed by Mrs. Holcker, directing said Company to pay the proceeds of a loan, No. 2149, to Mr. Holcker. This is known in the record as plaintiff's exhibit No. 2. The Investment Company also required and obtained a paper dated July 16, 1914, signed by both of the Holckers acknowledging receipt of $6000, the amount of the loan, which receipt also stated that all sums due

for labor and materials used in the erection of im-
provement on southeast quarter of northwest quarter,
section 5, Township 48, Range 33, Kansas City, Jackson
County, Missouri, known as No. 6200 Morningside Drive,
had been paid and that there were not due and outstand-
ing any sums of money or claims for labor or materials
used in the erection of the improvements on said land
which could by law be or constitute a lien thereon,
except as stated on the back thereof. The record does
not disclose that any lien claims were stated on the
back, nothing being shown as to what was on the back
of the receipt. This receipt is known in the record as
plaintiffs' exhibit No. 3. These exhibits 1, 2 and 3, or
at least the first two, were required by the Investment
Company for the purpose of protecting it in the pay-
ment of the money due on the deed of trust. Under the
first one, $4000 was paid to Brown, and after the
second one was given on April 13, 1914, the Company,
on May 4, 1914, paid $1000 to Mr. Holcker and a little
later the remainder of the proceeds of the loan in the
hands of the Investment Company, to-wit, $783.47 was
also paid to Mr. Holcker. He deposited these two last
named sums to his account in the bank and used it for
general purposes drawing against his account in the
course of his business and also in making payments for
the completion of the house after the contractor Brown
had defaulted as hereinbefore stated. All of Mrs.
Holcker's evidence is contained in a deposition taken by
plaintiffs at some date not disclosed by the record but,
of course, after the suit was filed but before the day of
trial. This deposition was read during the presentation
of plaintiffs' side of the case. Desiring to prove that
the name Irma H. Holcker, to exhibits 1, 2 and 3 was
her signature, the plaintiffs placed Mrs. Holcker on the
stand and had her identify her signature which she
did, nothing more being asked her, and she left the
stand, with no other evidence of hers in the record
save her deposition. As exhibit 1 was signed at the
same time the deed of trust was acknowledged, of course

her deposition, wherein she says she signed some papers at her husband's request not knowing or inquiring what they were, certainly covers the deed of trust and exhibit 1. But it is now claimed by plaintiffs, in their latest briefs and suggestions, that the evidence of Mrs. Holcker in said deposition wherein she denied knowledge concerning the papers she signed cannot be regarded as applying to exhibits 2 and 3, and that therefore we must regard her as having never denied knowledge of what was in those two exhibits and must hold as a matter of law, that her attempted defense is unavailing. We are unable to agree to this contention. In the first place, the deposition of Mrs. Holcker was offered and read in evidence and constitutes a part of the record in the case, and we cannot treat the case as if there was no such evidence in it. In the next place, we cannot accept counsel's mere statement as to when the deposition was taken· nor *assume* it was taken *before* July 16, 1914, the date of Exhibit 3. Of course, it was not taken before exhibit 2 was signed, since that was dated April 13, 1914, and suit was not instituted until June 17, 1914, and trial was not had until in May, 1916. It is true, in her deposition she makes no specific mention of *any* of said Exhibits nor was any specific mention of them made to her in any way. But she was asked about signing papers and she clearly and positively stated that while she signed some papers as requested by her husband yet she did not know what they were nor how many there were. There is no doubt but that this evidence certainly covered the deed of trust and exhibit 1; and if it does not also cover the other two exhibits· they would seem to be met and covered by her other evidence hereinbefore referred to, namely, that she knew nothing of a mortgage on the house or of what became of the money raised thereby. Clearly, if she had known the contents of Exhibit 2, she would have known that her husband obtained the proceeds of the loans therein designated. Under all the circumstances· we do not see how we would be justified

29—Mo. App.

in treating the case as if her deposition was not in the record and deal with her as if she had admitted signing exhibits 1, 2 and 3 without further explanation or denial. Again, exhibits 2 and 3 said nothing whatever about any contract with Brown or about any improvements made by him or liens created by him. Indeed Exhibit 2 said nothing about improvements whatever. Both of these exhibits were signed long after Brown had defaulted and abandoned the job. Exhibit 2 was merely a direction to pay proceeds of a loan, (designated as No. 2149, covering property known as 6200 Morningside Drive) to her husband; while exhibit 3 was a mere receipt for the proceeds of the loan with a statement therein that there were no outstanding claims for which a lien could be claimed.

There is no contradictory testimony as to her lack of knowledge in reference to the above matters, but even if there was, unless the contradictory evidence was *conclusive* upon her, it is not for this court to ignore the verdict of the jury or to ignore the testimony supporting it, and declare as a matter of law that she did know what she was signing and did make her husband her agent to erect the improvements.

This element of the wife's knowledge, in this case, is directly opposite to what it was in the Boeckler case, and it is a vital and crucial difference, and especially so if it is sought to hold the wife's property upon any theory of subsequent ratification of the husband's acts. It is well settled that there can be no ratification where the one who has the power of ratification is ignorant of the facts. [Winsor v. Lafayette County Bank, 18 Mo. App. 665; Pitts v. Steele Mercantile Co. 75 Mo. App. 221; Citizens Savings Bank v. Marr, 129 Mo. App. 26.] And such knowledge must be actual knowledge. Mrs. Holcker could not be held, on the principle of ratification, by what she might have learned had she made inquiry which if properly prosecuted would have brought knowledge. The doctrine of constructive knowledge has no application here. [Brown v.

Bamberger, 110 Ala. 342, 355; Haswell v. Strandring, 152 Ia. 291; United States v. Bebee, 180 U. S. 343, 354.]

Viewing the case from every angle, we are unable to declare, as a matter of law that there was an agency connection between Mrs. Holcker and her husband with reference to the erection of the improvements either under his contract with Brown or otherwise, and as there was no error in the trial wherein the case was submitted to the jury, we cannot uphold the granting of a new trial, and hence the verdict of the jury must stand. It is therefore ordered that the judgment be reversed and the cause remanded with directions to reinstate the verdict and enter judgment in accordance therewith. All concur.